(85 South. 212)

No. 22765.

SICKINGER v. BOARD OF DIRECTORS OF PUBLIC SCHOOLS FOR PARISH OF ORLEANS et al.

(June 10, 1920.)

*(Syllabus by Editorial Staff.)*

1. Appeal and error ⚖️878(1)—Appellee who does not appeal or file answer cannot obtain amendment of judgment as to other appellee.

An appellee who does not also appeal or file an answer to the appeal cannot obtain an amendment of the judgment in his favor and against another appellee.

2. Contracts ⚖️303(3)—Defendant held required to reconstruct house destroyed by storm while on temporary supports, under contract to move house and place in same condition on new lot.

Where defendant, with knowledge of the danger of a tropical storm, agreed to move plaintiff's house to new lot in consideration of plaintiff's conveyance to defendant of old lot, and to place house on new lot in identically the same condition that it was in on old lot, and to repair or replace any damage to the house, outhouses, fences, or furniture, it was required, on destruction of house by storm while standing on blocks, timbers, and jackscrews, by means of which it had been moved, to reconstruct the house, notwithstanding Civ. Code, art. 1933, providing that no damages can be recovered for breach of contract caused by fortuitous event or irresistible force, since defendant assumed risk of storm and was not required, in performance of contract, to remove house by any particular method.

3. Contracts ⚖️322(3)—Evidence held not to show that house destroyed by storm while being moved by defendants would have been destroyed by storm in any event.

In action for breach of contract to move house and repair and replace any damage to house during removal, where house while on temporary supports had been destroyed by a storm, admission that witnesses, if present, would have testified that the house as placed on blocks, timbers, and jackscrews was stronger than if it had been standing on original foundation *held* not to support contention that house would have blown down even if contract had been completed, but merely to prove that defendant's contractor, made a party by defendant with demand for judgment over, had properly braced the house.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Adam Sickinger against the Board of Directors of the Public Schools for the Parish of Orleans, in which Abry Bros. were joined as defendants on defendant's prayer that they be called in warranty. Judgment for first-named defendant, dismissing plaintiff's suit, and for Abry Bros., dismissing the call in warranty, and plaintiff appeals. Judgment annulled, and judgment

rendered for plaintiff against first-named defendant.

Carroll & Carroll, of New Orleans, for appellant.

Henry B. Curtis, of New Orleans, amicus curiæ.

John J. Reilley, Asst. City Atty., and I. D. Moore, City Atty., both of New Orleans, for appellee board.

George Montgomery, of New Orleans, for appellee Abry Bros.

O'NIELL, J. This case was submitted upon a statement of facts agreed upon by all parties. On and before the 17th of May, 1915, plaintiff owned a house and lot in the square bounded by Newton, Numa, Behrman and Diana streets, in the city of New Orleans. The school board had then acquired all of the square except the lot owned by plaintiff, and desired to purchase plaintiff's property for public school purposes. The president of the school board entered into negotiations with plaintiff for the purchase of his property without expropriation proceedings. Plaintiff claimed that the house and lot were worth not less than $4,000. The president of the school board, explaining that the board had no use for the house or other improvements on the lot, proposed that the board would buy, and sell to plaintiff, a lot of the same size, on the opposite side of the street in front of plaintiff's lot, and move the house and other improvements from plaintiff's lot to the lot across the street, in consideration of which plaintiff should transfer his lot to the school board. The proposition, as stated precisely by the president of the school board, was that the board should accomplish its object of acquiring plaintiff's lot at the cost only of the value of the lot and the expense of moving the house and other improvements, and that plaintiff should be as well off as he would be if the board should buy also his house and other improvements and he be compelled to buy another lot and build a new home. The agreement was reduced to writing by the president of the board and submitted to plaintiff, who accepted it. The instrument, signed by the president of the school board and by the plaintiff, was as follows, viz.:

"This agreement, made and entered into this 17th day of May, A. D. 1915, by and between the board of directors of the public schools for the parish of Orleans, La., and Mr. Adam Sickinger, of New Orleans, La., witnesseth:

"The board of directors of the public schools for the parish of Orleans agrees to purchase from the Olivier Land & Improvement Company the front half of lots 1, 2, 3, and 4, in square No. 7, of their property situated in the Fifth district of the city of New Orleans, having a frontage of 31 feet, 1 inch and 4 lines on Numa street, by a depth of 60 feet between parallel lines and forming the corner of Newton street, and to have the said property transferred into the name of Adam Sickinger, free of any and all incumbrances thereon, except the taxes for the present year.

"The said school board further agrees to have removed, at its expense, the house, outhouses and fences now belonging to Adam Sickinger, and to place same on the corner of Numa and Newton streets, together with the contents thereof; the said house, together with its contents, after removal to be in identically the same condition as exists at the present time. Any damage or injury which may be done to the said house, outhouses or fences, or furniture, to be repaired or replaced by the said school board. The cost of title, survey, changing of water meter, turning on the water, or other expense incident to the removal of said building to be likewise borne by the said board.

"The board further agrees to add to the present fencing, at its own expense, the additional fencing necessary for inclosing the front and rear of the one lot, an aggregate of about 30 feet of front fencing and 30 feet of rear fencing.

"In consideration of the foregoing, Adam Sickinger hereby agrees to transfer to the board of directors of public schools for the parish of Orleans, or to the city of New Orleans, as it may elect, the lot of ground now belonging to him, located at the corner of Numa and Newton streets, measuring 30 feet front by a depth of 124 feet 6 inches; the said lot being in the square bounded by Numa, Diana and Promernade and Newton streets,

and immediately across Numa street from the two lots hereinabove first referred to. The said lot of ground to be transferred to the said board free of all incumbrances, except the taxes for the present year.

"The board of school directors shall have the right to commence the said work at its option at any time within the next 60 days; but, having once commenced the said work, shall complete the same with the least possible delay.

"It is the intention of this agreement that the house, outhouses, fences, grounds and basement of the said removed house shall be, in every particular, equal to the condition of the present house as presently located.

"Thus done and signed at New Orleans, La., the day, month and year first above written, in the presence of two competent witnesses."

Pursuant to the agreement, the school board did, on the 28th of June, 1915, buy the lot of the Olivier Land & Improvement Company for the plaintiff and had the deed of conveyance made directly to him. On the same day plaintiff sold the lot on which his home stood to the city of New Orleans, as directed by the school board.

The consideration for which the Olivier Land & Improvement Company conveyed its lot to the plaintiff, as stated in the deed, was $500, acknowledged to have been paid by the school board. The consideration for which plaintiff sold his lot to the school board, as stated in the deed, was, first, the purchase price of $500 paid by the school board to the Olivier Land & Improvement Company for the lot sold by the company to plaintiff, and, second, the removal by the school board, at its own cost and expense, of the buildings and improvements from the lot bought by the school board to the lot bought by plaintiff.

On the 19th of May, 1915, the school board entered into a written agreement with Abry Bros., contractors, for the removal of plaintiff's house, at the cost of $525, including the rebuilding of the foundations under the house and the furnishing of all labor and material for doing the work, but not including plumbing or paving. In the letter of acceptance of the proposition of Abry Bros. the school board asked the contractors to advise the board when the contractors would be ready to commence the work, so that the board might notify plaintiff, and in the same letter, of date the 19th of May, 1915, the school board informed the contractors that the lot, to which plaintiff's residence was to be moved, had been purchased by the board, and in the same letter the board requested that the contractors give the matter prompt attention.

The contractors did not begin the work of moving the house or other improvements until the 20th of September, 1915. In the meantime, plaintiff repeatedly demanded that the school board carry out its contract to move the building and other improvements. These demands were made verbally, and every time a demand was made upon the board one of the officers of the board made the same demand upon the contractors by telephone.

From the time the work of removing the buildings was commenced it was prosecuted with due diligence until the evening of the 28th of September, 1915. The contractors had then succeeded in rolling the house across the street to the lot on which it was to remain. There it stood on temporary structures of blocks, timbers and jackscrews, by means of which the house had been moved, in the usual and customary manner of moving houses.

On the next morning, the 29th of September, 1915, a windstorm was raging in the city of New Orleans. Warnings of the storm, issued from the local weather bureau in New Orleans, showing the location of disturbance over the Caribbean Sea and the direction in which it was traveling, had been published in the New Orleans newspapers every day from the 22d of September, 1915. The velocity of the wind in the city of New Orleans in the afternoon of the 29th of September was the greatest that was ever recorded at the federal Weather Bureau in the city. Be-

tween the hours of 4 and 5 o'clock that afternoon plaintiff's house was blown down upon its temporary supports of blocks, timbers and jackscrews and was practically destroyed. His furniture in the house was also partly damaged and partly destroyed. It is conceded that the value of the house was $2,800, and that the loss in damage and destruction of furniture was $353.35.

After the storm plaintiff demanded that the school board carry out its agreement by reconstructing the house and by removing and reconstructing the outhouses, fences, etc., so that his residence, with its contents, would be in as good condition as it was on the lot from which the residence had been removed, all in accordance with the contract dated the 17th of May, 1915.

The school board declined to go on with the work, claiming that it had been prevented "by a fortuitous event or irresistible force."

This suit was brought to recover the loss sustained by plaintiff, amounting to $3,153.35, with legal interest thereon from the 29th of September, 1915. The defense urged by the school board is founded upon the provision in article 1933 of the Civil Code, viz.:

"Where, by a fortuitous event or irresistible force, the débtor is hindered from giving or doing what he has contracted to give or do, * * * no damages can be recovered for the inexecution of the contract."

Having urged that defense, the school board alleged that if any one was answerable for the loss suffered by plaintiff it was the firm of Abry Bros., for the failure to begin the removal of the buildings within the time specified in the contract between plaintiff and the school board. The board therefore prayed that Abry Bros. be called in warranty to defend the suit, and that if judgment should be rendered in favor of the plaintiff against the school board a judgment for the same amount should be rendered against Abry Bros. and in favor of the school board. Abry Bros. excepted to the call in warranty on the ground that there could be no call in warranty in an action for damages arising ex delicto. The exception was overruled, on the ground that the suit was for damages arising ex contractu.

In answer to the suit and to the call in warranty, Abry Bros. denied liability, adopting mainly the defense urged by the school board. Abry Bros. alleged, too, that there was no time limit fixed in the contract between Abry Bros. and the school board for beginning the work of removing the buildings, and that therefore the contractor was not in default for having failed to begin the work before the 20th of September, 1915.

The case having been tried and submitted on the issues thus presented, judgment was rendered in favor of the school board, rejecting plaintiff's demand and dismissing his suit at his cost, and in favor of Abry Bros. dismissing the call in warranty.

[1] The plaintiff alone has appealed; and as the school board has not filed an answer to plaintiff's appeal, the firm of Abry Bros. is out of the case. It is well settled that an appellee who does not also appeal or file an answer to the appeal cannot obtain an amendment of the judgment in his favor and against another appellee. The only question to be determined, therefore, is whether the school board is liable for the loss sustained by plaintiff.

The doctrine stated in article 1933 of the Civil Code, to the effect that damages are not allowed for a failure to carry out a contract if the party accused of having breached the contract was hindered by a fortuitous event or irresistible force, is subject to two modifications or exceptions mentioned in the same article of the Code. The first exception is that the party in default shall not be released from liability if he has by his contract expressly or impliedly assumed the risk of the fortuitous event or irresistible force. The

second exception is that an obligor who has been prevented from carrying out his contract by a fortuitous event shall not be released from liability if the fortuitous event or irresistible force was preceded by some fault of the obligor, without which fault the loss would not have occurred.

The two exceptions to the general rule stated in article 1933 of the Code may be considered together, for they are both founded upon the idea that the fortuitous event that prevented a carrying out of the contract was a danger that might reasonably have been contemplated by the parties to the contract. In that connection, the record contains the following significant and important admission made by the parties to this suit, viz.:

"It is admitted that the phenomena variously known as tropical cyclones, hurricanes, or equinoctial storms, are of common occurrence in this locality, and most usually occur in the period of the year between the 15th of August and the 10th of October.

"By this admission, it is not intended to be understood that these storms or cyclones occur annually, but it is intended to admit that they are well-known phenomena, which are liable to occur any year between the 15th of August and the 10th of October."

In that connection it must be observed that the school board was under obligation to commence moving the house within 60 days from the date of the contract; that is, the work was to be commenced some time before the 17th of July, 1915. Notwithstanding the repeated demands made by plaintiff, the work was not commenced until the 20th of September, 1915; that is, in the mid-season of danger of a tropical storm.

Considering that the danger of a tropical storm was well known by the parties to the contract, it may well be inferred from the language of the instrument that the school board did intend to assume the risk of a storm, and was therefore under obligation either to move the building before the season of danger or move it in such way as to avoid the danger. In fact there are several clauses in the contract which expressly imposed upon the school board all risk with regard to the safe removal of the buildings. The obligation was to move the house, outhouses and fences at the expense of the school board, and to place the building, with its contents, in identically the same condition on its new location in which it was on the lot formerly occupied by the plaintiff. Any damage or injury that might be done to the house, outhouses, fences, or furniture, was to be repaired or replaced by the school board, all at the cost of the school board. The context of the agreement precludes the idea that the building was at the risk of the plaintiff from the moment that he deeded the lot on which it stood to the school board until the school board should return the building, by delivering it to plaintiff on his new lot, in the same condition in which it was received by the school board.

Our decision of this case, however, turns upon the fact that the school board was not limited to the one method of moving the building; that is, by raising it from its foundations and hauling it across the street to the new lot, without dismantling it. For that reason, it cannot be said that the storm made it impossible for the school board to carry out its contract. That fortuitous event made it more expensive for the board to carry out the contract, but the expense of the work was not limited by the contract and was entirely at the risk of the school board.

It does not appear from the record that the school board paid the contractors anything for their unfinished work. Whether the board paid for the work is a matter of no importance, for it was certainly of no benefit to the plaintiff. The moving of the building and returning it to plaintiff in a condition equal in every particular to the condition in which the house was received by the school board was a very material part of the consideration for which the plaintiff sold his property to

the school board. And the school board has received and retained a material advantage from that consideration, notwithstanding the loss of the house; for the school board would have had to pay the full value of the house and lot, except for the obligation assumed by the board to return the house.

[2] Our opinion is that it was the duty of the school board to reconstruct the building after the storm, using what material was yet suitable and substituting like material for that which was destroyed.

Plaintiff's counsel refer us to an Ohio case (Board of Education v. Townsend, 63 Ohio St. 514, 59 N. E. 223, 52 L. R. A. 868), the facts of which were remarkably similar to the case before us. In the case cited a railroad company, desiring a lot of ground owned by the board of education, bought the lot, through the instrumentality of Townsend. The transaction was made by an exchange of lots, as in the case before us, and as part of the agreement Townsend obligated himself to remove within 60 days the schoolhouse from the board's lot to a lot which he conveyed to the board. The exchange of lots was made, but Townsend failed to move the schoolhouse within the time specified and it was destroyed by a storm. In the suit of the board of education for the value of the schoolhouse Townsend invoked as a defense the doctrine of release from liability by a fortuitous event, which at common law is called the act of God. The court rejected the defense and held Townsend liable, saying:

"It seems evident, looking to the entire agreement, that the essential purpose which the parties had in mind was, that there should be placed by the defendant, without expense to the board of education, the same facilities in the way of buildings for carrying on the public school there, that existed at the time of the contract on the lot then owned by and in use by the board."

The Ohio court, in the case cited, also used this sound and appropriate reasoning, viz.:

"The defense, which is admitted to be true, is based solely on the ground that on the 28th day of November, 1895, the schoolhouse mentioned in the contract was blown down and demolished by a violent windstorm so that it 'could not, as a schoolhouse, be removed,' * * * but to remove it in that way was ont exactly the obligation of the contract. The school building is spoken of in the contract as the thing to be removed and not as designating the manner of removal. It is practicable to remove a building intact; but that is not the only way. It may be removed, within the common understanding, by taking the material and reconstructing or rebuilding it at another locality."

It was admitted on the trial of this case that four architects and contractors, whose names were mentioned in the admission, and who had been summoned as witnesses on behalf of Abry Bros. but were not present in court, would, if they were present, testify that, as plaintiff's house was moved and placed on blocks, timbers and jackscrews, it was stronger than it would have been standing on the original foundations. Counsel for the school board refer to that admission in support of their argument that the building would have been blown down and lost by plaintiff even if the school board had complied with its contract by completing the job of moving the building before the storm occurred. The argument is founded upon a provision of article 1933 of the Civil Code, to the effect that a person who is in default for having failed to deliver to another party an object which he had contracted to deliver is released from responsibility if the object be lost by some fortuitous event or irresistible force by which it would have been lost even if it had been already delivered.

[3] Our understanding is that the admission as to what the four architects and contractors would have sworn to was made merely in support of the contention of Abry Bros. that they had properly braced the building so that it could be moved intact without extraordinary danger. In support of that defense

Abry Bros. also introduced in evidence drawings, plans and elevations, showing the manner in which the building was braced inside before it was lifted from its foundations. Such braces were necessary only because the jackscrews and blocks were not as solid a support for the building as were the permanent foundations. The buildings might have collapsed when lifted from its foundations if it had not been temporarily braced inside. In that sense, and in that sense alone, the building "was stronger than it would have been standing on its original foundations." But it was more exposed to the wind while standing on the blocks and jackscrews than it would have been if resting upon its original foundations, for the evidence shows that the foundations consisted of a "brick chain wall." In the absence of any evidence that any other building in the neighborhood was blown down by the storm that occurred on the 29th of September, 1915, we cannot infer, from the admission of what the four named architects and contractors would have testified to, that plaintiff's house was in as good condition to withstand the storm as it would have been if it had been resting upon its permanent foundations. We cannot believe that the four architects and contractors could have persuaded any one seeking shelter during that storm to go into or under plaintiff's house in preference to one of the neighboring houses, resting upon its permanent foundations; and if any one, during the storm, had acted upon such advice or opinion, he would have paid dearly for the advice.

There is no dispute as to the amount of plaintiff's loss.

The judgment appealed from is annulled, and it is now ordered, adjudged and decreed that the plaintiff, Adam Sickinger, recover of and from the defendant board of directors of the public schools for the parish of Orleans $3,153.35, with interest at 5 per cent. per annum from the 29th of September, 1915, and the costs of this suit.