LAND, J.
Peter G. Wilbert, the father of Philip A. Wilbert and Peter M. Wilbert, died in December, 1920, leaving his two sons as his sole heirs and legal representatives. Ophelia Le Blanc, the wife of the deceased, had departed this life 35 years before the death of her husband. On November 3, 1920, decedent made a last will and testament, mystic in form, in which he bequeathed certain special legacies, and instituted his two sons as universal legatees, with equal shares in his estate, subject, however, to the following conditions:
“I direct that no partition or division of my stock or of my interest in the A. Wilbert’s Bons Lumber and Shingle Co., or in the Myrtle Grove Planting and Manufacturing Company, or of any property that is held in common between me and my said brothers be made between my heirs within five years from my death, unless such company should be dissolved or the property sold before that time; in which event my said heirs are to receive, share and share alike, the portion of my estate in said sale or liquidation.
“I give eadh of my said heirs two thousand dollars per annum, payable quarterly, out of my interest in the companies above referred to for said period of five years. In the event of dividends being declared, these amounts are to be deducted therefrom, and the surplus of all dividends is to be paid over to my said sons share and share alike.
“I appoint my brother, Frederick Wilbert, George Wilbert, Charles Wilbert, and Joseph Wilbert, executors, with seizin and without bond, to handle, manage and conduct all of my affairs in the companies me'ntioned above and in all properties, movable and immovable, rights and credits, etc., which I own or hold in common with my said brothers, with full power to sell or dispose! of the same or any part thereof, and I charge them with the payment of my just debts.
“I also appoint my said sons Philip and Peter, my executors, with seizin and without bond,' for the management of whatever property, other than, that mentioned in the foregoing paragraph, I may own- at my death.”
On January 3, 1921, the last will and testament of Peter G. Wilbert was probated and ordered registered and executed.
On December 10, 1921, Philip A. Wilbert and Peter M. Wilbert, the sons of deceased, and the other testamentary executors obtained a loan in the sum of $80,922.36 from A. Wilbert’s Sons Lumber & Shingle Company,, represented by Frederick Wilbert, its president, for the purpose of liquidating the debts and legacies and other obligations due by the estate of Peter G. Wilbert, deceased, and executed a promissory note for said amount. In order to secure the payment of this note, said heirs and executors delivered in pledge to A. Wilbert’s Sons Lumber & Shingle Company 20 shares of the capital stock of said company, and pledged also to said company all amounts du,e as dividends on 70 shares of its capital stock held and owned by the estate of Peter G. Wilbert, with full authority to said company to collect and receive all the dividends of said stock, and to apply same, in full, to the payment of said note, principal, and interest, provided there was to be paid first from said dividends to the estate of Peter G. Wilbert the sum of $4,000 annually, to enable said estate to pay to the heirs, Peter M. Wilbert and Peter A. Wilbert, the annual legacy to each, as provided by the will of the deceased.
On April 20, 1922, the plaintiff, Philip A. Wilbert, instituted the present suit, citing all of the executors of the last will of Peter G. Wilbert, deceased, and Peter. M. Wilbert in his individual capacity and as one of the executors, and also the A. Wilbert’s Sons Lumber & Shingle Company.
Petitioner prayed: (1) That the nonpartition clause for 5 years in said will be declared null and void and unenforceable, and, if not in its entirety, then, in the alternative, that it be held not to affect the legitime *202 of petitioner, or the community claim of petitioner’s mother, aggregating the sum of $10,-000, more or less.
(2) That the clauses in said will he decreed to be without effect in so far as they seek to constitute Frederick Wilbert, George Wilbert, Charles Wilbert, and Joseph Wilbert, together with petitioner and his brother, Peter M. Wilbert, as executors, to manage, handle, and conduct all of the affairs of the deceased in the companies referred to, and that petitioner and his brother be held to be the sole and only executors of all of the property, rights, and credits of the estate, including the stocks turned over to them as such executors.
(3) That the ex parte order of the court below, of date January 3, 1921, ordering the registry and execution of said will, be modified as prayed for in plaintiff’s petition.
(4) That petitioner be placed in possession of his inheritance, and that said executors be ordered to deliver to him and his coheir all of the property belonging to the estate of Peter G. Wilbert, to be partitioned in kind, and, if not in kind, by licitation, and subject to such administration as the circumstances and the law require.
(5) That there be judgment decreeing the agreement of date December 10, 1921, between A. Wilbert’s Sons Lumber & Shingle Company, and the executors and heirs of Peter G. Wilbert, null and void, and of no effect, as far as the attempted loan was made to said estate, and in so far as the same undertakes to bind said estate for the repayment of said loan.
On April 27, 1922, the defendant coexecutors, Joseph, George, Frederick, Charles and Peter Wilbert, filed a plea of estoppel, alleging that plaintiff had qualified as coexecutor before filing this suit, and was .without legal right to prosecute an action to annul said will or any of its provisions, as he had taken an oath to maintain and carry out this will as written.
On June 6, 1922, the coexecutors above named filed an exception of no right or cause of action, and, reserving all rights under said exceptions, urged a second plea of estoppel of plaintiff’s right to bring the present suit, alleging that he is one of the universal legatees under the will, and that he has accepted the legacy and has actually received a part or portion of the said legacy and enjoyed benefits under the will of his deceased father, which he is now seeking to annul.
On June 6, 1922, the A. Wilbert’s Sons Lumber & Shingle Company filed an exception of no right or cause of action.
The pleas of estoppel were overruled, and the exceptions of no right or cause of action were maintained by the trial judge, and plaintiff’s suit was dismissed, at his cost.
[1 ] Defendants have neither appealed from the judgments against them rejecting these pleas of estoppel nor have they answered the appeal taken by plaintiff and prayed for an amendment of the judgment so as to sustain said pleas. Under such circumstances, the judgments of the lower court as to the disposition of the pleas of estoppel are final, and cannot be reviewed by this court. Thomas v. Whittington, 127 La. 551, 53 South. 860; Oglesby v. Turner, 127 La. 1093, 54 South. 400; City of New Orleans v. New Orleans Jockey Club, 115 La. 911, 40 South. 331; Alfred Hiller Co. v. Hotel Grunewald Co., 147 La. 129, 84 South. 520; Sickinger v. Board of Directors of Public Schools, 147 La. 479, 85 South. 212.
The case is therefore before us for consideration solely on the exceptions of no right or cause of action pleaded by defendants.
The paramount issue involved in this litigation is whether the last will and testament of deceased is drafted under article 1300 of the Revised Civil Code of this state, permitting a testator to order that the effects bequeathed by him be not divided for a certain *204 time, or until the happening of a certain condition; or whether the testator intended by the terms of said will to create a “trust estate” for a period of 5 years, and to clothe the executors designated in said will with the powers of “trustees” under the provisions of Act 107 of 1920, approved July 7, 1920.
This act was in full force and effect when the testator made his will in November 3, 1920. The fixed policy of this state as to the creation of “trust estates” is plainly expressed in section 16 of article 4 of the present Constitution, in the following language:
“No law shall be passed abolishing forced heirship or authorizing the creation of substitutions, fidei commissa or trust estates; except that the Legislature may authorize the crear tion of trust estates for a period not exceeding ten years after the death of the donor; provided, that where a natural person is the direct beneficiary said period may be made to extend until ten years after his majority; and provided further, that this prohibition as to trust estates or fidei commissa shall not apply to donations strictly for educational, charitable or religious purposes.” (Italics ours.)
This policy of the state as to trust estates had already been expressed by Aet 107 of 1920, which was continued in force by the Schedule of the present Constitution.
Section 8 of said act expressly provides:
“That the provisions contained 'in the Revised Civil Code, and the laws of this state relative to substitutions, fidei commissa, or trust dispositions, and the legitime shall not he deemed to apply to, or in any manner affect donations of the character and made'in the manner provided hy this aet; and all laws, * * * conflicting with the provisions of this aet are repealed insofar as regards the purposes of this act, hut not otherwise.” (Italics ours.)
In other words, a testator, looking to the welfare of his children, after his death, is no longer limited by the provision of article 1710 of the Civil Code, prohibiting charges or conditions from being imposed by him on the legitimate portion of forced heirs, if he should see fit to designate “trustees” in his last will and testament for the protection of, his heirs, and, to that end, should direct a prudent administration, in safe hands, of his estate for their benefit.
To emphasize the breaking down of ancient barriers in the disposition of property by donation, the act repeats in section 1:
“That, it shall be lawful for any one to make a donation inter vivos or mortis causa of any hind of property, and of any amount, whereby an individual or individuals * * * arc 4es' ignated as trustee or trustees; provided,1 however, that nothing in this act shall be construed to affect the law in regard to the disposable portion, same that it shall be permissible to provide that the legitime or any portion thereof of any forced heir or heirs shall he administered in trust for his or their benefit hy said trustee or trustees, the income to he paid annually or oftener to said forced heir or heirs, or' * * * their legal representatives.” (Italics ours.)
While section 2 of said act provides that the donor shall have the right to prescribe “the manner in which the property donated shall be administered, and the objects, to which it, * * * shall be applied,” etc., yet it is provided in section 4 of said act:
“That said trustee or trustees shall administer the property entrusted to them in conformity with the directions contained in the act of donation, and shall home all the powers needed for such administration; and can mortgage, pledge, alienate or incumber the designated 'property whenever necessary in the opinion of the trustee, unless prohibited hy the donor.” (Italics ours.)
Section 5 of said aet provides that:
“Where two or more trustees have been appointed, action must be by consent of all, unless otherwise authorized hy the donor in the 'act of donation."
The act in sections 6 and 7 has made ample provisions for the protection of the beneficiary or cestui que trust by demanding annual accounts of the administration of the trustee; by requiring that all trust funds shall be deposited and kept in an incorporated bank in this state, separate and apart from the individual funds of the trustee; by providing for his removal for any breach of the *206 trust imposed upon him or for other improper conduct, which, in the judgment of the court, jeopardizes the trust estate; and by vesting the district court of the domicile or residence of the donor with jurisdiction over all matters and controversies arising in the course of or relating to the administration and disposition of the trust estate, and with general supervisory jurisdiction over the trust estate and the actions of the trustee.
It is expressly provided in section 2' of said act that the donor shall have the right to prescribe the number of trustees; that individual trustees shall furnish bond for an amount to be fixed by the court, unless the giving of bond shall have been expressly dispensed with by the donor in the act of donation ; and that the period of donation of said trust shall not exceed 10 years after the death of the donor, except when the beneficiary is a minor at the time of the death of the donor, in which case it shall not exceed 10 years after the minor has attained majority.
[2] In our opinion the will of Peter G. Wilbert creates a trust estate specially designated in said will as “my stock or my interest in the A. Wilbert’s Sons Lumber & Shingle Co., or in the Myrtle Grove Planting and Manufacturing Company or any property that is held in common between me and my said brothers.”
The fact that the will directs that no partition or division of this particular property shall be made between the heirs within 5 years from the death of the testator, unless the company should be dissolved or the property sold before that time, cannot be reasonably construed in any other light than as indicating the period of duration of the trust, as the testator appointed his four brothers “executors,” with seizin and without bond, “to handle, manage, and conduct all my affairs in the companies, mentioned above and in all properties, movable and immovable, rights and credits, which I own or, hold in common with my brothers, with full power to sell or dispose of the same or any part thereof.”
The will provides not only for the administration of the trust estate designated therein, but also for the payment by the executors to the beneficiaries, the two heirs of the testator, of an annual income, in the following language:
“I give each of my said heirs two thousand dollars per annum payable quarterly, out of my interest in the companies above referred to for said period of five years. In the event of dividends being declared these amounts are' to be deducted therefrom, and the surplus of all dividends is to be paid over to my sons share and share alike.”
It is true that the testator appointed his sons Philip and Peter as his executors also with seizin and without bond, but it is to be noted that they were so appointed only “for the management of whatever property, other than that mentioned in the foregoing paragraph I may own at my death.”
The testator expressly excluded the beneficiaries, his two heirs, from any management of or control over the trust estate confided to his brothers as executors. The sons of the testator are designated as executors “for the management” of all property not included in the trust estate, and without any power “to sell or dispose of the same” as executors.
The heirs, being the beneficiaries of the trust confided to their uncles as trustees under the will, could not act as trustees of this particular estate, and therefore were not designated as such by the testator
The very atmosphere of the case, as shown by the state of facts appearing upon the face of the will, clearly indicates that it was the intention of the testator to create a trust estate, to be placed under the exclusive control of his brothers, for the benefit of his heirs during the period of 5 years from the date of his death.
*208 The greater portion of the fortune of deceased, estimated at nearly $1,000,000, consisted of stock owned hy him in the companies mentioned in his will. His four brothers were stockholders in the same companies. It was a family affair. The future value of this stock depended largely upon the proper management of these companies by competent administrators. The interest of the testator as a stockholder in these companies was necessarily linked with that of his brothers ; in fact, not only the fortune of deceased, but the fortunes of the family might become involved by his death, if the immediate control of these companies should be interfered with.
The natural affection of the testator for his brothers and his children, and the desire to protect their mutual interest in making his last will, clearly indicates the motive of the decedent in creating the trust estate for 5 years after his death, thereby leaving their common interest in these companies intact during this period, and under the protection of the members of the family.
It is conceded by able counsel on both sides that no particular words ¿re necessary to create a trust, but that the intention to do so must be clearly expressed.
We' are of the opinion that the intention of the testator to create a trust,is manifested, not only by the language of the will, but by the state of facts shown to exist upon its face at the date of the will. The language of the will is not consistent with any other purpose. To hold that the testator merely intended to prevent a partition of his estate for 5 years would be to read out of the will those clauses conferring upon the executors the management of all of the affairs of the companies and of all property held in common during that period, and to abrogate their “full power to sell or dispose of the same or any part thereof.” To so hold would be to strike with nullity the provision in the will providing for thé payment annually to the heirs of the income from the trust estate, and to divest said heirs as executors of the right to manage all property not included in the trust estate. Such holding would be a complete repudiation of all that the testator clearly intended, and the sole purpose of his last will and testament would be defeated.
“The first and great rule in the exposition of wills, to which all other rules must bend, is that the intention of the testator, expressed in his will, shall prevail, provided it be consistent with the rules of law. * * *. This principle is generally asserted in the construction of every testamentary disposition.”
Smith v. Bell, 6 Pet. (31 U. S.) 68, 8 L. Ed. 322.
The provisions of Act 107 of 1920 are ample to sustain the will in this case. Under this act the legitime of any forced heir may be administered in trust for his benefit, the income to be paid annually, or oftener, to said forced heir. Section 2.
The will provides for quarterly payment of the annual income to the heirs.
The trustee under said act can mortgage, pledge, alienate, 'or incumher “the designated property,” whenever necessary in his opinion, unless prohibited by the donor. Section 4.
The will does not prohibit the executors as trustees from pledging, mortgaging, or incumbering the trust estate; therefore said executors as trustees have such authority.
Trustees under section 4 of said act are granted all the powers needed for the administration of the property intrusted to them.
The executors or trustees were therefore legally directed by the will to handle, mar-age, and conduct all of the affairs of the testator in said companies, and in all properties, rights, and credits owned or held by him in common with his brothers.
[3] The fact that the four brothers of the testator are named merely as “executors” in said will cannot be construed as excluding *210 the intention of the testator to create a trust estate to be managed by them as trustees.
“The powers and duties of an executor and those of a trustee are separate and distinct; and, while they are usually performed by different persons, the same persons are occasionally named in wills as both executors and as trustees. But it is not necessary to constitute an executor a trustee that he should have been so named or appointed.” 39 Cyc. 807.
“There is no legal obstacle to the same persons being appointed as executors and trustees. As a general rule, it may be stated that where the duties imposéd on executors are active, and l’ender the possession of the estate convenient and reasonably necessary, they will be deemed trustees for the performance of those duties to the same extent as though declared so to be in the most explicit’terms.” 11 R. C. L. p. 21, citing Wilson v. Snow, 228 U. S. 217, 33 Sup. Ct. 487, 57 L. Ed. 807, 50 L. R. A. (N. S.) 604.
It is rather the functions to be performed by the appointee in the will than the designated name of such appointee that determines his true fiduciary character.
The extraordinary powers conferred upon the executors, so called, in said will, “of selling or disposing of” the part of the estate placed under their separate control, is so foreign to, the provisions of the Civil Code relating to the administration of estates as to compel us to look for such authority under some other provision of the laws of this state. We find such authority only under the trust act of 1920. The unusual powers conferred upon the executors in the will necessarily imply that they are to exercise the powers of trustees conferred by said act. ■
The executors are not required to give bond under the terms of the will. As their duties to be performed are those of trustees rather than of executors, no bond is required of them in that capacity. Under section 2 of said act, the giving of bond by the trustee may be dispensed with by the donor in the act of donation.
[4] It was competent for the executor to authorize his four brothers as trustees to manage and sell or dispose of the property designated, as is plainly stated under section 4 of said act:
Act 107 of 1920 expressly authorizes the creation of trust estates in donations mortis causa, including even the legitimate portion of forced heirs, and defines the powers, heretofore unknown to our system, of the trustees of such estates.
While this act is a radical departure from the venerable landmarks of our jurisprudence, we can no longer amputate the trust provisions in a testament in order to compel the last;Will of a testator to conform to the Procrastean bed of former codal limitations. The inhibitions of the Code as to the imposition by the donor of charges or conditions on the legitime, and the restrictions placed hitherto upon the executor in the administration of the estate confided to his care/are things of the dead past, when dealing now with trust estates. The constitutionality of this act is not questioned. As a court we are not concerned as to its wisdom; nor can we be moved by the sanctity of the time-honored articles of the Civil Code, which have been swept away by the new legislation, to disregard the plain provisions of the more recent enactment.
The will before us designates: (1) Certain property as a trust estate. (2) Appoints certain individuals as trustees, though named as “executors.” (3) Prescribes the duties and powers of the trustees under the trust imposed upon them. (4) Fixes the annual income fo be paid by the trustees to the beneficiaries. (5) Names the two heirs of the testator as the beneficiaries of the trust. (6) Limits the duration of the trust to 5 years after the death of the testator.
The will does not contain merely a clause against the partition of the estate during this period. But, in addition to such clause, there are other clauses which unmistakably contain all the essential elements of a trust under Act 107 of 1920.
*212 The mere indivisibility of the estate during the period of 5 years after his death was not, therefore, the prime object of the testator in the making of his will, but a mere incidental and auxiliary provision deemed advisable by him for the sole purpose of holding the trust estate intact during its administration, and of fixing the limits of the duration 'of the trust. As the intention of the testator to create such trust clearly appears from the language of the will, it is a legal and valid disposition under said act, and should be given full effect as written.
The judgment appealed from is therefore affirmed, at the cost of appellant.
Rehearing refused by the WHOLE COURT.
O’NIELL, C. J., and BRUNOT, ROGERS, and THOMPSON, JJ., dissent from refusal to grant rehearing.