No. 2910

Second Circuit

EYLERS v. ROBY MOTORS CO., INC.

(July 1, 1929.  Opinion and Decree.)
(October 1, 1929.  Rehearing Refused.)

R. D. Fuller, of Shreveport, attorney for plaintiff, appellant.

Wise, Randolph, Rendall & Freyer, of Shreveport, attorneys for defendant, appellee.

REYNOLDS, J.  Plaintiff sued defendant to obtain judgment against him for $600.00

with legal interest thereon from judicial demand, less a credit of $315.03.

He alleged:

"That, during the month of April, 1924, your petitioner placed one Reo automobile, model T-6, five passenger, with the Roby Motors Company, Inc., the defendant herein, with authority to sell the said automobile for a sum not under the full amount of $344.00.

"That the said defendant agreed to take the said automobile and to sell the same for a sum not less than $344.00, and that the said defendant agreed to pay to your petitioner any and all sums over and above the said price of $344.00 received from the sale of the said automobile."

He further alleges that the defendant sold the automobile for $600, of which $300 was paid in cash and the balance by a promissory note drawn payable to the order of the defendant and that the note is past due.

Defendant admitted receiving the car for sale and alleged that it was not to be sold for less than $344.41, and alleges that that was the amount of plaintiff's indebtedness to it at the time of the receipt of the car. It admitted selling the car for $600.00 and alleged that of that amount $312 was represented by a promissory note that was unpaid. It alleged that it holds the note for the purpose of collecting it and applying sufficient of its proceeds to the satisfaction of the balance of plaintiff's debt to it, and that it had offered to deliver it to plaintiff and thereby tendered it to him upon payment of the balance owing by plaintiff to it.

And assuming the character of plaintiff in reconvention it alleged that in order to put the car in salable condition it was necessary to have certain repairs made to it and that these were made at a cost of $93.45, and that in finding a buyer for the car it was necessary to pay a salesman $36, and that plaintiff owes it the aggregate of these amounts in addition to the $344.41, or $473.86, less $325 in cash received by defendant from the purchaser at the time of the sale, and also less $50 collected by it on the promissory note given by the purchaser in part payment for the car, or a total credit of $375, leaving a balance owing by plaintiff to defendant of $98.86 with 8 per cent. per annum interest thereon from June 30, 1923, and for which it prayed judgment against plaintiff in reconvention.

The case was tried on these issues and judgment was rendered rejecting the demands of the plaintiff and also rejecting the reconventional demand of defendant.

From this judgment the plaintiff appealed.

The defendant did not appeal nor has it answered the plaintiff's appeal.

OPINION.

The agreement between plaintiff and defendant for the sale of the automobile is in evidence and reads as follows:

"Shreveport, La., June 24, 1924. This will authorize Roby Motors Company to sell my oldest Reo touring car to the best possible advantage, crediting proceeds against my account. It is understood and agreed that the car is not to be sold for less than the account at this time, which is $344.41."

J. M. Harper testified that he was the manager of defendant's automobile repair shop and had examined the plaintiff's car and that on October 15, 1924, repairs were made to it of the character and at the cost following, to-wit: Tightening up the connecting rods, grinding the valves, clean-

ing the carbon, checking up the transmission, $88.95, and that in addition to this work there was a tire to put on, lights and horn to be fixed and batteries to be changed.

"Q. Now, Mr. Harper, was that necessary, in order to sell the car?

"A. Yes, sir.

\* \* \*

"Q. Well, state the reason for that?

"A. You couldn't hardly sell any car if you didn't have any lights; if the lights wouldn't burn and the horn wouldn't blow. You understand, there are lots of things you have to fix on a car to put it in salable shape. That was a used car.

\* \* \*

"Q. Was that work necessary to put the car in condition to make the best possible sale of it?

"A. Yes, sir.

"Q. And the charges there are reasonable and usual?

"A. Yes, sir.

"Q. You know that that was actually done?

"A. Yes, sir."

Defendant exceeded the authority vested in it by plaintiff in having the automobile repaired, but the evidence establishes that it acted in good faith and that its acts inured to the benefit of plaintiff. Its acts were those of an agent or negotiorum gestor and plaintiff became liable to defendant for its useful and necessary expenses in that connection.

"Equity obliges the owner, whose business has been well managed, to comply with the engagements contracted by the manager, in his name; to indemnify the manager in all the personal engagements he has contracted; and to reimburse him all useful and necessary expenses." Civil Code, article 2299.

"The principal must reimburse the just and necessary sums which the agent has expended in the execution of his mandate and pay him reasonable compensation for his services." Interstate Electric Co. vs. Neugas, 3 La. App. 353.

Plaintiff cannot, in good conscience, retain the benefit of defendant's acts in reconditioning the car so as to make it salable, and refuse to reimburse it the money it expended in so doing; and this is true also of the amount paid by defendant to a salesman for finding a buyer for the car.

If this were a suit by plaintiff against defendant as his agent for an accounting or settlement the defendant would be entitled to recover from the plaintiff all moneys necessarily expended by it in the premises that inured to the benefit of plaintiff; and the same principle is true here although the suit is not one for an accounting or settlement but to recover a specific sum of money on the theory that the relation of principal and agent did not exist.

"An agent who sells goods on a credit, is not responsible to the principal until the price is received, unless the sale was improperly made." Bird's Syndic vs. Dix's Estate, 8 La. 130.

That was a suit against the succession of an agent for the value of certain property received by him to be sold for account of his principal and which had been sold on a credit by him or his succession. The court below non-suited the plaintiff, and on appeal the Supreme Court in affirming the judgment, said:

"The amount sold and collected does not appear to have been yet collected, and unless the factor was responsible in his private capacity for selling it improperly (which is not pretended here) the estate of Dix cannot be made to pay it, before the money is received."

As there, so here, it was not contended that the agent had exceeded his authority in selling the principal's property partly on a credit.

Defendant tendered plaintiff the note taken by it for the balance of the price of the car upon condition that the former pay the balance owing by him to it in the premises and this offer the plaintiff has not accepted.

If plaintiff desired legal proceedings instituted to compel payment of the note it was his duty to advance the necessary money and give the necessary security for the payment of court costs and attorney's fees. Defendant was under no obligation to assume such liabilities.

Plaintiff cites the case of Kinney vs. Crane, 9 La. 254, as authority for the contention that defendant owes him the amount of the note representing the deferred payment on the price of the automobile.

The agent's liability in that case was not put on the ground that he had sold his principal's property on a credit instead of for cash but on the ground that he had not exacted security from the purchaser for the credit and had held the note representing it for years in his possession without using common diligence to collect it and thus had made the debt his own.

Here the defendant exacted from the purchaser and had recorded a mortgage on the property sold to secure the payment of the unpaid part of the price and plaintiff's suit was instituted about ninety days after the maturity of the mortgage debt.

The suit being one to obtain judgment against defendant for a specific sum of money and the evidence not showing that defendant is indebted to plaintiff in the amount claimed or any other amount, plaintiff's demands were properly rejected.

The court below rejected defendant's reconventional demand and defendant neither appealed from that judgment nor answered the plaintiff's appeal. Therefore so much of the judgment appealed from as rejects defendant's reconventional demand is not before us.

City of New Orleans vs. N. O. Jockey Club, 115 La. 911, 46 So. 331.

Thomas vs. Whittington, 127 La. 551, 53 So. 860.

Oglesby vs. Turner, 127 La. 1093, 54 So. 400.

A. Hiller Co. vs. Hotel Grunewald Co., 147 La. 129, 84 So. 520.

Sickinger vs. Board of Directors, etc., 147 La. 479, 85 So. 212.

The judgment of the district court is correct and accordingly it is affirmed.