ROGERS, Justice.
 

 Andrew Stewart, 3d, and Mrs. Katherine Eustis Stewart sued by way of intervention in the liquidation proceeding of the Canal Bank & Trust Company to recover damages in the sum of $41,811 for the alleged unfaithful administration of a certain trust estate created by their father. The intervention was dismissed by the court below, and the interveners have appealed from the judgment.
 

 On June 22, 1922, William P. Stewart, the father of the appellants, executed a notarial act creating a trust, with the Canal Bank & Trust Company as trustee, his wife, Mrs. Katherine Eustis Stewart, as beneficiary during her lifetime, and interveners as beneficiaries after the death of their mother. The corpus or capital of the trust estate consisted of a number of valuable securities which were delivered to the trustee at the time the notarial act was executed.
 

 The trust agreement contained the following provisions, viz.:
 

 “(4) The securities covered hereby may be sold by the Bank as Trustee and the proceeds reinvested in other securities with the consent of the said Katherine Eustis Stewart^ and new securities purchased to be held as the original securities were held, subject to the provisions hereof.
 

 ‘‘(5) The Bank shall render to Katherine Eustis Stewart during her life, and to her children or their legal representatives after her death, an annual account of its receipts and disbursements under this trust until its expiration. The Bank shall not be responsible for anything done or- any action taken by it except in ease of its negligent or wilful misconduct.”
 

 During its administration of the trust the trustee bank disposed of the securities originally received by it and acquired other securities in their place and stead. When the Canal Bank & Trust Company was placed in liquidation, the Hibernia National Bank was appointed and qualified as trustee. The liquidators of the original trustee bank surrendered to the successor trustee bank the trust estate, consisting of new and different securities purchased by the former tz-ustee.
 

 On the refusal of the Hibernia National Bank, the new trustee, to bring this suit, it was brought by interveners themselves. Neither William P. Stewart, plaintiffs’ father, the creator of the trust, nor Mrs. Katherine Eustis Stewart, the plaintiffs’ mother, the primary beneficiary under the trust, both of whom are living, is a party litigant.
 

 Interveners allege that the value of the trust estate as delivered to the Hibernia National Bank was $35,539.58 instead of $77,350, which would be the value of the trust estate if the original securities had not been sold and the proceeds reinvested. They allege that the Canal Bank & Trust Company acted negligently and in violation of law in reinvesting the proceeds derived from the sale of the original securities, causing a loss to the cor
 
 *212
 
 pus of the trust estate, which they own, of $41,811. In the alternative, interveners aver that the amount of their funds used in the alleged illegal investment was $67,493.92 on which they suffered an actual loss of $31,954.92.
 

 Interveners, in support of their action, rely on the provisions of Act No. 45 of 1902, relating to banks organized and to be organized for the purpose of conducting a savings, safe deposit, and trust banking business, and defining, regulating, and limiting their powers. Particularly, on section 8 of the statute, which regulates the manner in which the funds held by the trustee must be invested.
 

 The defendant liquidators rely on the provisions of Act No. 107 of 1920 and the terms of the trust agreement itself.
 

 The trial judge held that the act of 1902 had no application to the trust agreement, which was created under and is governed by Act No. 107 of 1920. We think-that the ruling was correct. In fact, interveners judicially admitted its correctness, when they alleged in their petition for the appointment of the Hibernia National Bank as trustee that the trust was created in accordance with the provisions of Act No. 107 of 1920.
 

 Act No. 107 of 1920 was enacted to permit donations mortis causa and inter vivos to be made designating individuals and banks to act as trustees, and regulating the powers, duties, and actions of such trustees.
 

 It cannot be seriously questioned that prior to the adoption of the act of 1920, it would have been impossible to create a trust of the character under review here. Before that legislative enactment, trusts were prohibited under article 1520 of the Civil Code, except where the codal provisions had been modified by statutes permitting the creation of trusts for educational, charitable, or religious purposes. Act No. 124 of 1882; Act No. 158 of 1904; Act No. 72 of 1918.
 

 Section 4 of Act No. 107 of 1920, declares that the trustee or trustees shall administer the property intrusted to them in conformity with the directions contained in the act of donation, and shall have all the powers needed for such administration, including the power to mortgage, alienate, or incumber the designated property whenever necessary in the opinion of the trustee, unless prohibited by the donor. The same section of the statute also provides that: “The Trustee or Trustees shall not be responsible for anything done, or any action taken by it or them except in the cases of its or their negligence or wilful misconduct.”
 

 The act of donation in this case not only did not prohibit the trustee from selling the securities intrusted to it, but, on the contrary,. expressly authorized the trustee, with the consent of Mrs. Katherine Eustis Stewart, the primary beneficiary, to sell the securities and reinvest the proceeds in other securities. The instrument also provided that: “The bank shall not be responsible for anything done or any action taken by it except in case of its negligent or wilful misconduct.”
 

 We are satisfied from the evidence that there was no negligence nor willful misconduct on the part of the Canal Bank & Trust Company in administering the trust property. The record shows that the trustee sold the securities intrusted to its care at good prices
 
 *214
 
 •and reinvested the proceeds in other securities at current market rates. The securities purchased by the trustee were considered •sound investments at the time they were ac•quired.
 

 In all the transactions, the trustee acted on the advice of Mr. Lamar, one of its vice ■presidents in charge of its bond department, a securities expert, after consultation with Mr. Eustis, a well-known stock and bond broker •of New Orleans, a brother of Mrs. Katherine Eustis Stewart, the primary beneficiary un•der the trust agreement. Mr. Eustis acted under the authority of a letter addressed to the trustee bank by his sister, wherein she •advised .the bank that acting under the provisions of paragraph 4 of the donation inter vivos executed by William P. Stewart on June ■29, 1922, she delegated to her brother, Cartwright Eustis, the authority to give written •approval, and confirming all the approvals given by him under the authority.' Mrs. Katherine Eustis Stewart testified on the trial of this ease that she wrote the letter and that she had given her brother the power to .approve investments for the trust estate. And Mr. Eustis testified that he had approved -every bond purchased by the trustee bank.
 

 Interveners, contend that a discretionary trust power cannot be delegated, and that the .approval of Mr. Eustis could not absolve the ■trustee bank from responsibility in reinvesting the trust funds. But there is no question here of any delegation of its powers by the trustee. The bank merely reinvested the trust funds with the consent of the bene-fieiary’s duly accredited representative. The fact that Mrs. Stewart selected her brother as .being more qualified than she was herself to investigate and approve the securities -before they were purchased by the trustee in no way detracts from the terms of the trust agreement. And we think the record fairly shows that Mrs. Stewart has ratified and adopted as her own the acts of her brother.
 

 For the reasons assigned, the j adgment appealed from is affirmed.