J. Cornelius Rathborne, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket Nos. 83105, 84655.   Promulgated April 5, 1938.

*Louis C. Guidry, Esq.,* for the petitioner.
*Allen T. Akin, Esq.,* for the respondent.

### OPINION.

Black: These proceedings involve deficiencies in income tax for the years 1932 and 1933 in the amounts of $401.55 and $544.65, respectively. The principal issue is whether, under the stipulated facts, petitioner is taxable on any part of the $21,905.20 and $18,886.02 paid to him during 1932 and 1933, respectively, by the trustee of the trust estate created under the will of Joseph Rathborne, deceased, petitioner's grandfather, and, if so, the determination of the respective taxable portions for the taxable years in question. In his income tax returns filed for the years 1932 and 1933, respectively, petitioner did not report as taxable income any part of the several amounts paid to him by the trustee. The respondent determined that of the amounts paid to petitioner, $4,987.66 should be included in petitioner's taxable net income for 1932 and $6,652.59 for 1933. In his answer filed in Docket No. 83105, the respondent affirmatively alleged that of the $21,905.20 paid to petitioner during 1932 he should have

included in his taxable net income for that year the amount of $8,323.05, and has made claim for an increased deficiency for 1932 upon that ground. The facts are set forth in a stipulation of the parties, which we adopt as our findings of fact. Only such of the facts as seem necessary to a discussion of the issues are stated herein.

Petitioner is an individual and a resident of Westbury, Long Island, New York, having formerly been a resident of Harvey, Jefferson Parish, Louisiana.

The will of Joseph Rathborne, dated June 14, 1921, probated, proved, registered, and ordered executed on August 24, 1923, before the Twenty-eighth Judicial District Court for the Parish of Jefferson, State of Louisiana, contained provisions as follows:

FOURTH: I direct that all my just debts and charges and the foregoing expenditures and legacies and the costs, expenses and taxes of my succession together with any estate or legacy taxes of my succession, together with any estate or legacy taxes upon the foregoing legacies against my estate or against the said legatees, as well as like charges against my heirs, shall be paid out of any funds I may have on hand and out of securities I may have at my death, and out of the earnings of my trust estate before touching or disposing of my holdings in the Parish of Tangipahoa, La., or in any corporation or business I may there be engaged in and before disposing of my timber holdings elsewhere. But I require that my said securities, if needed for the purpose first stated, shall be sold without haste and to realize as much as possible their true value.

FIFTH: I give and bequeath the rest and remainder of my estate, wheresoever situated, to my two grandchildren, Joseph Cornelius Rathborne and Kathlyn George Rathborne, share and share alike, including herein their legitime, the whole in trust, however, as hereinafter set out.

I hereby create a trust for the said rest and remainder of my estate and for the universal legacy aforesaid and I give and bequeath the said residue of my estate wherever situated to Canal-Commercial Trust & Savings Bank and to any Trust Bank succeeding to the same, in trust however, for the use and benefit of the said universal legatees, my said grandchildren, Joseph Cornelius and Kathlyn George Rathborne, and within the limitations and under the conditions and restrictions hereinafter imposed to-wit: * * *

The language immediately following that just quoted gave directions to the trustee regarding the sale of the shares of stock owned by the testator and the preservation of the investment made in certain timber lands, and it has no special application to the present proceedings. The sixth article of the will reads as follows:

SIXTH: The Trustee shall proceed to invest my estate with the exception noted in Paragraphs 2 and 3 of Article 5 of this will, in sound, safe, interest paying bonds, having regard at all times to the character of the security rather than to a high rate of return. * * * Within the limitation herein expressed the Trustee is authorized to sell, exchange or otherwise dispose of any securities belonging to my trust estate and to reinvest the same from time to time as opportunity permits. All sums received from sales of capital assets shall likewise be invested and reinvested under the authority hereinabove granted. All revenues in excess of the requirements of the several beneficiaries as herein-

after set out and in excess of the carrying charges and expenses of my estate shall likewise be invested and reinvested and form part of the capital of my trust estate.

The Trustee may from time to time and as required take from and pay out of the capital of the estate any sums of money needed for any of the purposes contemplated by this will or to make up deficiencies in revenues and needed for the payment to beneficiaries as hereinafter set out.

Then article 7 reads in part as follows:

SEVENTH: Trustee shall pay out (of) the revenues of the trust estate and out of the principal, should it be necessary to trench upon the latter as authorized in Article 6th hereof: * * *

Then followed a special legacy of $5,000 per annum to W. W. Rathborne, brother of the decedent, a special legacy of $30,000 a year to his daughter-in-law, Georgie W. Rathborne, mother of the two beneficiaries, and certain provisions for payment of income to the petitioner, Joseph Cornelius Rathborne, and his sister, Kathlyn George Rathborne. The trustee was to pay to them through their mother for their care and education adequate sums until they should respectively reach the age of 21 years. The will then provided as follows:

4th. After my grandson reaches the age of twenty-one years, the Trustee shall pay him the income of his share in the trust estate in the following proportions: One-third thereof during the first three years; one-half thereof during the next three years, and the whole thereof during the ensuing four years of this trust, payable in quarterly installments.

Should my grandson marry after reaching the age of twenty-one years and before the expiration of this trust, Trustee may advance to him out of the accumulation of interest and revenue and if necessary out of the principal a sum to acquire a home and to establish the same not to exceed One Hundred Thousand Dollars and shall in case of such marriage increase the allowance from the income to one-half the same or the whole thereof in the discretion of the Trustee. If such marriage occurs before his twenty-seventh year, the Trustee may also advance out of the funds in the manner last provided a sum not to exceed two hundred thousand dollars, if same should be needed to set my said grandson up in business or to put him forward in life.

*       *       *       *       *       *       *

6th. In case the revenues of my trust estate should not be sufficient at any time to meet the charges imposed thereon in this paragraph the several beneficiaries shall suffer a diminution and loss of their several allowances, allowances in proportion to the deficiency and in case the revenue shall thereafter increase the allowances shall be resumed as provided herein.

The duration of the trust is specified as follows:

EIGHTH: The trust estate here created and the trust herein established for my grandchildren shall subsist as to my grandson for ten years after he reaches the age of twenty-one years and for my grand-daughter for ten years after she reaches the age of twenty-one years.

The Canal-Commercial Trust & Savings Bank was named as one of three executors and also as sole trustee.

The executors have not been discharged, except that the Canal-Commercial Trust & Savings Bank, whose name was changed to Canal Bank & Trust Co., was placed in judicial liquidation May 20, 1933, and thereupon ceased to act as executor.

The National Bank of Commerce in New Orleans was in due course appointed in the place and stead of the Canal Bank & Trust Co.

During the calendar year 1932 the trust had a total income of $181,923.33, consisting of $71,503.11 of taxable income and $110,420.22 of tax-exempt income. During said calendar year the trustee expended from the fund of the trust estate $92,981.59, representing a deficiency in the Federal estate tax of the estate of Joseph Rathborne, $2,466.29 in taxes, $1,615.86 for brokerage and commissions, and $2,495.00 for salaries of the advisory committee and caretakers. It also paid to Georgie W. Rathborne her annual legacy of $30,000, and to W. W. Rathborne his annual legacy of $5,000. In the sale of securities of the trust estate a loss of $103,699.72 was incurred. The trustee paid the sum of $21,905.20 to the petitioner, pursuant to the terms of the will.

During the calendar year 1933 the trust had a total income of $170,400.06, consisting of $60,023.21 taxable income and $110,376.85 tax-exempt income. The trustee expended from the funds of the trust estate $2,433.41 interest paid, $3,978.57 taxes, $725.01 brokerage, and $2,520 for caretakers. It also paid to Georgie W. Rathborne her annual legacy of $30,000, and to W. W. Rathborne his annual legacy of $5,000, and to Marion and Betha Rathborne their annual legacy of $600, bequeathed to them in the codicil to the will. There were losses of $69.70 from the sale of capital assets and $5,150.36 from bad debts. The trustee paid the sum of $18,886.02 to the petitioner, pursuant to the terms of the will.

The petitioner, J. Cornelius Rathborne, became twenty-one years of age on June 12, 1930.

Petitioner contends (1) that under the law of Louisiana the trust estate created by petitioner's grandfather, Joseph Rathborne, was a mere agency, rather than a trust as the term "trust" is used in sections 161 to 164, inclusive, of the Revenue Act of 1932, with the result that petitioner was the actual owner of one-half of the property held in trust and, therefore, in determining his own net income he would be entitled to deductions for one-half of the losses sustained by the trust from the sales of capital assets in 1932 and 1933 and from bad debts in 1933; (2) that if the trust estate is held to be a trust within sections 161 to 164, inclusive, then petitioner, as a beneficiary and remainderman under the trust, is entitled to deduct from his gross income an amount of the losses of the trust propor-

tionate to the income received by him therefrom; and (3) that if the trust estate is held to be a trust within sections 161 to 164, inclusive, then in determining whether the amounts paid to petitioner by the trustee were from taxable or tax-exempt income, certain expenses of the trust, special annuities and the deficiency for Federal estate tax, should be regarded as having been paid by the trustee out of the taxable rather than the tax-exempt income of the trust estate. The respondent opposes contentions (1) and (2), and in connection with contention (3) argues that the deficiency in Federal estate tax of $92,981.59 is not an allowable deduction from trust income at all, and that the amounts paid to petitioner by the trustee should be allocated between taxable and tax-exempt income according to the authorized Ravenscroft to employ such legal and clerical assistants penses (exclusive of the annuities of $35,000 and $35,600, respectively), bears to the total adjusted taxable and unadjusted tax-exempt income of the trust.

We shall now consider petitioner's first contention. Before the enactment of Act No. 107 of the Legislature of Louisiana of 1920 (La. Gen. Stat. 9815–9822) trusts were prohibited in Louisiana except for educational, charitable, or religious purposes. *In re Liquidation of Canal Bank & Trust Co.*, 181 La. 207; 159 So. 325, and authorities therein cited. Section 1 of Act No. 107 (sec. 9815, La. Gen. Stat.) provides:

It shall be lawful for anyone to make a donation inter vivos or mortis causa of any kind of property, and of any amount, whereby an individual or individuals or, a bank or banks now or hereafter organized under the laws of this state for the purpose of conducting savings, safe deposit and trust banking business, or which have accepted the provisions of law relative thereto, and banks organized under the acts of the congress of the United States, are designated as trustee or trustees; provided, however, that nothing in this act shall be construed to affect the law in regard to the disposable portion, save that it shall be permissible to provide that the legitime or any portion thereof of any forced heir or heirs shall be administered in trust for his or their benefit by said trustee or trustees, the income to be paid annually or oftener to said forced heir or heirs, or his or their legal representatives.

The policy of the state as expressed in Act No. 107, *supra*, was continued in force by the Louisiana Constitution of 1921, article IV, section 16. *Wilbert* v. *Wilbert*, 155 La. 197, 99 So. 36.

The trust estate in question became effective upon the death of Joseph Rathborne in August 1923. *Pires* v. *Youree*, 170 La. 986; 129 So. 552; *Succession of Forstner*, 186 La. 577; 173 So. 111.

Act No. 107, *supra*, was repealed by Act No. 7, Louisiana Acts, Third Extraordinary Session, 1935. This repeal did not have the effect of divesting any of the rights established by the trust estate

# 612

in question. *Succession of Manning*, 185 La. 894; 171 So. 68; *Succession of Forstner, supra.* The Louisiana courts have recognized as valid all trust estates which were duly created under Act No. 107 and became effective during the period that act was in force. *Wilbert* v. *Wilbert, supra; Succession of Manthey*, 159 La. 743; 106 So. 289; *Succession of Manning, supra; Succession of Forstner, supra.*

In *Canal Bank & Trust Co. et al., Executors*, 30 B. T. A. 390, one of the petitioners there was the trustee of the identical trust estate involved in the present proceedings. The petitioners there contended that the decedent, Joseph Rathborne, had created three separate trust estates rather than one. We held that only one trust was created and that the income thereof accumulated and held by the trustee pursuant to the provisions of the will was taxable to the trust. After quoting sections 9815, 9816, and 9818 of the Louisiana General Statutes in full, we said:

From the foregoing we think it is clear that the interests of minor heirs *may be vested in a trustee* for them until they reach their majority and for a period of 10 years thereafter, as was provided for in the decedent's will with respect to the grandchildren. [Italics supplied.]

We have carefully considered petitioner's first contention and are of the opinion that the trust created under the fifth article of decedent's will is not a mere agency, as petitioner contends, but is a trust within the meaning of that term as used in sections 161 to 164, inclusive, of the Revenue Act of 1932. It became effective while Act No. 107, *supra*, was in full force and effect. Under the decedent's will the trustee acquired certain substantial rights and was charged with certain obligations which made him by far more than a free agent. *Succession of Manning, supra.* In so holding we have not overlooked certain language contained in *Buck* v. *Larcade*, 183 La. 570; 164 So. 593, which in effect overrules *Buck* v. *Haas*, 180 La. 188; 156 So. 217, cited by respondent in his brief. The alleged trust in *Buck* v. *Larcade* was not of the kind specifically provided for in Act No. 107, and was therefore without any statutory authorization. That is an entirely different situation from the one involved in these proceedings. We hold for the respondent on this point.

We shall now consider petitioner's first alternative contention, namely, that, as a beneficiary and remainderman, he is entitled to deduct from his gross income an amount of the losses of the trust proportionate to the income received by him therefrom. Petitioner concedes at the outset that the cases of *Anderson* v. *Wilson*, 289 U. S. 20; *T. Rosslyn Beatty*, 28 B. T. A. 1286; and *Baltzell* v. *Mitchell*, 3 Fed. (2d) 428; certiorari denied, 268 U. S. 690, are apparently against him, but submits that in none of these cases was the question considered from the standpoint which he now proposes. Petitioner's

standpoint is that even though we regard the trustee as holding the legal title to the assets that were sold at a loss, the petitioner, nevertheless, had such an "economic interest" in the assets as would entitle him to a proportionate part of the losses within the doctrine of *Helvering* v. *Falk*, 291 U. S. 183, and that in this respect *Helvering* v. *Falk* is distinguishable from *Anderson* v. *Wilson* and supports petitioner's contention.

We do not believe that petitioner is in the same position as were the beneficiaries in the *Falk* case. There the governing instrument directed payment to the beneficiaries of the entire proceeds of certain mining property held in trust, less certain expenditures for taxes, expenses, etc., and the trustees were regarded by the Supreme Court as a "mere conduit" for passing such proceeds to the beneficial owners. In the instant proceedings, petitioner during the taxable years in question was not entitled to any of the proceeds from the sale of the corpus, as such, but only to that proportion of the income of his share in the trust estate provided for in the fourth paragraph of the seventh article of his grandfather's will. Under the sixth article the trustee was authorized to "pay out of the capital of the estate any sums of money needed for any of the purposes contemplated by this will or to make up deficiencies in revenues and needed for the payment to beneficiaries", but, except for such purposes, the trustee was required to invest such proceeds in good bonds, which bonds were to form a part of the capital of the trust estate. Furthermore, under the laws of Louisiana the trustee in the instant proceedings was vested with substantial rights and was far from being a free agent or a mere conduit. *Succession of Manning, supra*. In *Canal Bank & Trust Co. et al., Executors, supra*, this identical trust was held by us to be a separate taxable entity. Under such circumstances it is our opinion that the losses in question are deductible only by the trust, and that there is no authority in the law for allowing any proportion thereof as a deduction from petitioner's gross income. *Anderson* v. *Wilson, supra; T. Rosslyn Beatty, supra*. See also *Selma Wertheimer et al., Executors*, 31 B. T. A. 407, 411.

The next question is whether the payment during 1932 by the trustee, from the funds of the trust estate, of a deficiency in Federal estate tax of the estate of Joseph Rathborne, deceased, in the amount of $92,981.59 affects in any way the $21,905.20 which was paid to petitioner by the trustee during the same year. During 1932 the trust estate had a gross taxable income of $71,503.11 and a gross tax-exempt income of $110,420.22. Of the $21,905.20 paid to petitioner, the respondent determined that $4,987.66 was paid from taxable income of the trust and the balance from tax-exempt income. Under the fourth paragraph of the seventh article of the will of Joseph

Rathborne, the trustee was required to pay petitioner one-third of the income of his share in the trust estate during the first three years after he reached twenty-one years of age. The amount of $4,987.66 was determined by the respondent as follows:

Total taxable income of the trust_____ $71,503.11
Deduct:
    Taxes_____ $2,466.29
    Annuity payments_____ 35,000.00
    Commissions, etc_____ 1,615.86
    Salaries, etc_____ 2,495.00
                                        41,577.15

Adjusted net income_____ 29,925.96
Petitioner's one-sixth interest_____ 4,987.66

The petitioner contends that under section 23 (c) of the Revenue Act of 1932, and the decisions of *Commissioner* v. *Beebe*, 67 Fed. (2d) 662, and *Commissioner* v. *Pennsylvania Co. for Insurances on Lives & Granting Annuities*, 83 Fed. (2d) 545, the trust was entitled to deduct the $92,981.59 allowed by the statute "as a deduction only to the estate"; that under the decisions of *John H. Watson, Jr., et al., Trustees*, 35 B. T. A. 706; and *Rena S. McCahan*, 35 B. T. A. 943, the trustee was entitled to pay the $92,981.59 out of the taxable income of the trust; that since the deficiency in estate taxes exceeded the taxable income, the entire $21,905.20 paid to petitioner was paid out of tax-exempt income; and that the respondent erred in determining that $4,987.66 thereof was paid from taxable income.

The respondent contends in part that since the executors of the estate of Joseph Rathborne, deceased, have never been discharged, the taxes in question, if allowable at all, are allowable under section 23 (c), *supra*, to the executors rather than the trustee; and that in any event the payment of the $92,981.59 of taxes did not affect the $21,905.20 of income paid to petitioner under such decisions as *Everett J. Esselstyn, Executor*, 26 B. T. A. 181; affirmed per curiam, 65 Fed. (2d) 1015; certiorari denied, 290 U. S. 678; and *Minnie L. Wolf*, 32 B. T. A. 959; affirmed on another point, 84 Fed. (2d) 390, to which should be added the recent case of *Anna F. Ardenghi*, 37 B. T. A. 345.

Assuming, without deciding, that the petitioner is correct in his contention that, under the *Beebe* and *Pennsylvania Co.* cases, the trust was entitled to deduct the deficiency in Federal estate tax paid in 1932 in determining its own net income for taxation, we think the respondent is correct in his contention that the payment of the tax did not affect the taxability or nontaxability of the $21,905.20 paid to petitioner during the same year as the part of the income of the trust he was entitled to receive under the terms of the will. The facts

in the instant case, as they concern the point we are now discussing, are similar to the facts in the *Minnie L. Wolf* case.

The petitioner in the *Wolf* case contended, just as the petitioner in the instant proceedings now contends, that the inheritance taxes paid by the estate should be considered as having been paid out of the taxable income of the estate, thus leaving only tax-exempt income as available for distribution to the beneficiary. In denying this contention, we said:

\* \* \* This, however, is contrary to the fact that the income of the estate was used in actual distribution to the several legatees enumerated in the schedule by way of interest upon their legacies, and there is no rule of law which requires that this fact shall be disregarded and the payment of the inheritance tax legally presumed to be made from the income acquired after the taxpayer's death. As to Federal estate taxes, the decisions are to the contrary. *Walter S. Gurnee et al., Executors*, 13 B. T. A. 262; *Everett J. Esselstyn, Executor*, 26 B. T. A. 181; affirmed per curiam, 65 Fed. (2d) 1015; certiorari denied, 290 U. S. 678; *Agnes Sitterding*, 32 B. T. A. 506; cf. *Jackson* v. *Price*, 74 Fed. (2d) 707.

In the recent case of *Anna F. Ardenghi, supra*, after discussing *Walter S. Gurnee et al., Executors*, 13 B. T. A. 262; *Agnes Sitterding*, 32 B. T. A. 506; and the *McCahan*, and *Wolf* cases, we said:

In each of the foregoing cases the inheritance tax paid exceeded the gross income of the estate. With all due respect to the Circuit Court of Appeals for the Fourth Circuit, which reversed the Board in the *Sitterding* case, we think the question of whether or not a beneficiary is subject to tax must depend upon whether or not the beneficiary has received a distribution during the taxable year from the income of the estate or trust. If the estate had income and distributed a part of that income to the beneficiary, it is taxable to the beneficiary, regardless of the not inconsistent fact that inheritance taxes in an amount in excess of the income of the estate were paid either from other income and corpus, or solely from corpus.

The question of the taxability of the amount received by a beneficiary was not involved in *John H. Watson, Jr., et al., Trustees, supra*. In the other case relied upon by petitioner, namely, *Rena S. McCahan, supra*, the Board "pointed out that the distributions there were made from corpus or from tax-exempt income and, therefore, would not be taxable to the beneficiary, either under the decision of the Board in the *Sitterding* case or under the decision of the court in that case." *Anna F. Ardenghi, supra*. We think that upon the authority of *Everett J. Esselstyn, Executor; Minnie L. Wolf;* and *Anna F. Ardenghi*, all *supra*, this issue must be decided for the respondent.

The last question involves the proper allocation, as between taxable income and tax-exempt income, of the amounts of $21,905.20 and $18,886.02 paid to petitioner by the trustee of the trust estate during the years 1932 and 1933, respectively. In his deficiency notices the respondent determined that of the above amounts, $4,987.66 should

be allocated to taxable income for 1932 and $6,652.59 (less $212.50 Liberty bond interest exemption) for 1933. In his answer filed in Docket No. 83105, the respondent affirmatively alleged that, of the amount paid to petitioner in 1932, $8,323.05 should be allocated to taxable income, and upon that basis he duly made a claim for an increased deficiency for 1932. In his brief the respondent makes certain concessions which would reduce the amounts allocated to taxable income to $8,110.84 for 1932 and $5,917.56 for 1933, computed as follows:

*Calendar Year 1932*

| | | |
|---|---|---|
| Gross taxable income of Trust | | $71,503.11 |
| Deduct Operating Expenses: | | |
|     Taxes | $2,466.29 | |
|     Brokerage & Commissions | 1,615.86 | |
|     Salaries & Caretakers | 2,495.00 | |
| | | 6,577.15 |
| Adjuted taxable income | | $64,925.96   37.027% |
| Gross tax-exempt income | | 110,420.22   62.973% |
|     Totals | | $175,346.18   100% |

Amount of taxable income allocated to petitioner is 37.027% of $21,905.20, or $8,110.84.

*Calendar Year 1933*

| | | |
|---|---|---|
| Gross taxable income of Trust | | $60,023.21 |
| Deduct Operating Expenses: | | |
|     Interest | $2,433.41 | |
|     Taxes | 3,978.57 | |
|     Brokerage | 725.01 | |
|     Caretakers | 2,520.00 | |
| | | 9,656.99 |
| Adjusted taxable income | | $50,366.22   31.333% |
| Gross tax-exempt income | | 110,376.85   68.667% |
|     Totals | | $160,743.07   100% |

Amount of taxable income allocated to petitioner is 31.333% of $18,886.02, or $5,917.56.

Petitioner contends that in addition to the above amounts of $6,577.15 and $9,656.99, which the respondent now concedes are deductible from the taxable income of the trust before the allocations of the amounts paid to petitioner are made, the deficiency in Federal estate tax of $92,981.59 should also have been deducted from the taxable income of the trust for 1932, thus leaving no taxable income to be allocated to petitioner for 1932, and that the payments totaling $35,600 to Georgie W. Rathborne, W. W. Rathborne, Marion Rathborne, and Betha Rathborne should also have been deducted from the

taxable income of the trust for 1933, thus reducing the adjusted taxable income for 1933 to $14,766.22 instead of $50,366.22 as shown in the above computations. We have already considered the contention relating to the deficiency in Federal estate tax. Regarding petitioner's contention relating to the items totaling $35,600, the parties are in disagreement as to whether these amounts, under the will, were payable in any event, and therefore exempt from taxation to the recipients under *Burnet* v. *Whitehouse*, 283 U. S. 148, or whether they were payable only out of income, and therefore taxable to the recipients under *Helvering* v. *Butterworth*, 290 U. S. 365. We need not and do not decide this disagreement between the parties for the reason that it is our opinion that if the amounts were payable in any event, they would not be deductible at all by the trustee, and if the amounts were payable only out of income, the recipients would be in the same classification as petitioner, namely, beneficiaries under the trust estate, and the amounts received by them would be allocated between taxable and tax-exempt income on the same basis as the amounts paid to petitioner have been allocated in the computations above.

The deficiencies should be recomputed by including, in petitioner's taxable net income for the years 1932 and 1933, $8,110.84 of the $21,905.20 paid to him in 1932 and $5,917.56 of the $18,886.02 paid to him in 1933, respectively.

*Decisions will be entered under Rule 50.*