William J. Garland, Deceased, by Harry C. Mabry, Executor of the Estate of William J. Garland, Deceased, and Grace O. Garland v. Commissioner.
Garland v. Commissioner
Docket No. 109902.
United States Tax Court
1943 Tax Ct. Memo LEXIS 213; 2 T.C.M. (CCH) 419; T.C.M. (RIA) 43339; July 2, 1943
*213 The income of a trust created by petitioner consisted of taxable and tax-exempt income. Held, the trust income during the tax years that was (1) received by petitioner, (2) used to pay premiums upon insurance policies covering his life, and (3) used for the support of his minor children, is taxable to petitioner in the same ratio that the taxable income of the trust bears to the total net income of the trust. Melvin D. Wilson, Esq., 819 Tile Insurance Bldg., Los Angeles, Calif., for the petitioners. B. M. Coon, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion This proceeding was initiated to test the correctness of respondent's determination of deficiencies in income taxes for the years 1936 and 1937 in the respective amounts of $1,470.10 and $1,971.66. These deficiencies are based on the inclusion by respondent in petitioner's income of certain sums received by the decedent Garland from the income of a trust created by him primarily for the benefit of his former wife and their children. Most of the facts were stipulated and are here set forth only to the extent necessary to an understanding of the several issues involved. The returns were filed in *214 the sixth district of California. Findings of Fact 1. William J. Garland died July 25, 1940. Hereinafter the word "petitioner" will be understood as meaning William J. Garland prior to his decease. 2. On March 25, 1931, petitioner executed a declaration of trust, naming Title Insurance and Trust Company, of Los Angeles, as trustee. The trust is designated on the records of Title Insurance and Trust Company as Trust No. P-9319. The trust was declared to be irrevocable and by its terms petitioner's then wife, now Alzoa Scott, was to get $15,000.00 per year income, their four children were to get $6,000.00 per year, and petitioner was to get the balance, if any. Petitioner's interest was to terminate at his death. 3. On March 25, 1931, petitioner and his then wife signed a contract by the terms of which she agreed, out of the provision made in the trust indenture for her and the children, to support, maintain, and educate them thereafter, and to waive all claims against him for the support of the children. She also agreed that if she failed to support the children, petitioner could direct the trustee to pay the income from the trust estate, which was for their direct benefit, to *215 a legally appointed guardian of the children. The parties also agreed that each party would pay income taxes on his or her income from the trust. 4. Petitioner's then wife, now Alzoa Scott, filed a suit for divorce against petitioner on June 22, 1931. Petitioner's attorney accepted service for him and no answer was filed. The divorce hearing was held July 16, 1931. The custody of the four children was given to their mother. Neither the interlocutory nor final decree made any mention of the property rights, alimony, or support. 5. On August 17, 1932, petitioner's then wife married Millard L. Scott, and throughout the years 1936 and 1937 she was the wife of said Millard L. Scott. 6. In October 1933, petitioner married Grace O. Hoyt and they were husband and wife throughout the years 1936 and 1937. There was living throughout 1936 and 1937 a minor child, Mary Jane Garland, the issue of that marriage. 7. On November 29, 1935, petitioner entered into an agreement with Harry C. Mabry and Newlin & Ashburn, attorneys, employing them in connection with Trust No. P-9319, mentioned above, particularly to institute and prosecute legal proceedings for the purpose of breaking or modifying or *216 obtaining some benefit to the petitioner under said trust and agreement. In addition to a cash retainer, petitioner agreed to pay to the attorneys as consideration for their services - * * * 20% of any and all moneys, real property, personal property, insurance benefits, shares, interests, debts due first party, and any and all other property or things of value whatsoever that second parties [attorneys] may be able to obtain for first party [petitioner]; or that first party [petitioner] may receive from, out of, or in any connection whatsoever with said trust or agreement, whether by suit, settlement, compromise, or otherwise, or whether by breaking, modifying or enforcing said trust or agreement, or otherwise, or whether as the result of the efforts of second parties, of first party, of both parties, or of others, or otherwise * * *. In said contract it was stated that petitioner had never received any income from said trust agreement, or any sums whatsoever. The agreement further provided that: First party hereby grants, conveys, assigns and transfers to second parties twenty per cent (20%) of such moneys and other properties whatsoever, including both real and personal and the *217 proceeds thereof, that may be recovered or received as in paragraph 1 provided and as are by the provisions of said paragraph 1 the basis of said twenty per cent (20%) contingent fee, first party retaining eighty per cent (80%) thereof, and said parties are expressly authorized to dispose of their respective interests, or any portion thereof, at any time, in any manner, and to whomsoever they desire, subject, however, to the rights of the parties hereto under this agreement. That agreement has never been modified or changed and as petitioner received any sums as a result of said litigation, he turned 20% thereof over to said attorneys. 8. On March 7, 1936, petitioner filed a complaint in the Superior Court of the State of California, in and for the County of Los Angeles, alleging fraud and undue influence and failure of consideration, and praying that Trust No. P-9319 be cancelled and set aside and that title to the real and personal property be quieted in him. The complaint named as defendants Alzoa Eaton Scott, their four children, and the trustee. Answers generally denying the allegations in the complaint were filed by the various defendants. With the issues thus framed, petitioner *218 and the defendant, Alzoa Scott, entered upon a compromise of the litigation under date of September 16, 1937. Under the contract of settlement the parties agreed that they would endeavor to get the court to revise the trust indenture so that Alzoa Scott would receive 37 1/2% of the net income of the trust, petitioner would receive 37 1/2% of the net income of the trust, and the four children would receive 25% of the income of the trust. Petitioner was also given the right to assign his 37 1/2% interest in the trust and his interest was extended so that it would not terminate at his death but would continue to his assignees or legatees during the term of the trust. The parties also agreed that after the execution of the compromise agreement and prior to its final approval by the court, the income of the trust would be paid 37 1/2% to Alzoa Scott, 37 1/2% to petitioner, and 25% to the children, and that regardless of the outcome of the litigation the parties would keep the amounts received under the agreement prior to the final decision of the court. 9. After the agreement of compromise was entered into, the complaint was amended to allege mistake of fact on the part of the petitioner *219 and to ask for a revision of the trust indenture to comply with the provisions of the compromise agreement. Answers were filed by all the defendants, generally denying the allegations in the complaint. Thereafter all the defendants, with the exception of the trustee, joined in a petition to the court to consider, authorize, and approve the proposed compromise of the litigation and said petition was filed August 15, 1939. The trustee refused to join in such petition. Upon the hearing of the petition to compromise, the court, first by minute order and then by formal written judgment dated February 1, 1940, approved the compromise and ordered a modification of the trust in the particulars named. The trustee, Title Insurance and Trust Company, appealed the judgment of the Superior Court. Upon appeal to the District Court of Appeals of the State of California, the judgment of the Superior Court was affirmed (Mabry v. Scott, 51 Adv. Cal. App. 379) and upon rehearing by the Supreme Court of the State of California the judgment of the Superior Court was affirmed. Title Insurance and Trust Company, trustee, applied for a writ of certiorari by the Supreme Court of the United States. *220 The Supreme Court of the United States denied the petition for writ of certiorari. All of the decisions of the Appellate Courts were handed down in 1942. The corpus of the trust consisted of five life insurance policies on the life of petitioner in the amount of $175,000; two lots in Los Angeles; and all of petitioner's interest in his father's estate. The cash surrender values of the life insurance policies held by the trust were as follows: 1936
$16,889
1937
19,320 The net premiums paid on the insurance policies were $3,813 in 1936 and $3,879.31 in 1937. The receipts of the Trust P-9319 for the years 1936 and 1937 were as follows: 1936
Interest
$ 2,602.38
Municipal Bond Interest
8,020.00
U.S. Bond Interest
$ 184.68
122.07
57.61
Dividends
105.50
Rent
$12,400.00
Depreciation
2,554.79
Garland Estate
13,862.42
13,862.42
Total
$37,047.91
Capital Gain
465.40
$37,513.31
1937
Municipal Bond Interest
$ 7,580.00
U.S. Bond Interest
719.20
Dividends
110.00
Interest
2,023.75
Rents
$13,200.00
Depreciation
2,554.79
Garland Estate
16,130.49
16,130.49
Depreciation
6,793.94
Total
$39,763.44
Capital Gain
5,082.00
$44,845.44
*221 Under the provisions of the compromise agreement, Title Insurance and Trust Company, in 1936, paid over to Alzoa Scott, $21,800.00 and in 1937, $28,850.00. Petitioner received from Alzoa Scott under the compromise agreement the following amounts: 1936
7/3/36
$ 4,000.00 - 50%
of amount received by Alzoa Scott from trustee
12/4/36
2,500.00 - 37 1/2%
of amount received by Alzoa Scott from trustee
$ 6,500.00
1937
4/23/37
4,000.00 - 40%
of amount received by Alzoa Scott from trustee
9/14/37
5,000.00 - 50%
of amount received by Alzoa Scott from trustee
11/15/37
2,625.00 - 37 1/2%
of amount received by Alzoa Scott from trustee
$11,625.00
1/3/38
693.75 - 37 1/2%
of amount received by Alzoa Scott from trustee
Alzoa Scott received $1,850.00 from the trustee on December 31, 1937 and paid 37 1/2% of same to petitioner on January 1, 1938. In accordance with petitioner's agreement with his attorneys, petitioner paid to them 20% of the amounts mentioned above, as follows: 1936
$1,300.00
1937
2,325.00 and $138.65 of the $693.25 in 1938
The basis to petitioner of the interest he retained through the trust indenture in the assets he put into Trust P-9319 *222 is far in excess of any income or corpus he received from the trust through December 31, 1937, whether he received such income or corpus directly or through Alzoa Scott, or through the payment of income by the trustee to the children of petitioner, or through the payment by the trustee of insurance premiums on policies on petitioner's life, or otherwise. Throughout the years 1936 and 1937, Alzoa Scott had the legal and actual custody of petitioner's four children by said Alzoa Scott, and had ample means of theirs or her own to support them. Petitioner paid $597.32 Federal income tax for the calendar year 1937 in the following installments, on or about the following dates: March 15, 1938
$149.33
June 15, 1938
149.33
Sept. 15, 1938
149.33
Oct. 15, 1938
149.33
On March 15, 1941, petitioner filed with the Collector of Internal Revenue at Los Angeles, California, a claim for refund of 1937 income tax. The gorunds set forth in the refund claim in support thereof are substantially the same as the issues involved in this proceeding. Opinion ARUNDELL, Judge: The several questions raised in this proceeding all have to do with the proper treatment of certain income of Trust *223 P-9319, which trust was established by petitioner in 1931. This trust was modified under the circumstances set forth in our findings of fact and the parties are in agreement that it is the instrument as so reformed that is here controlling. One broad question runs through most of the issues raised in this case. A portion of the income of the trust was received from municipal securities which interest admittedly with tax-exempt and some small part of the trust income was received from United States securities, the interest on which was partially exempt. It is petitioner's contention that an appropriate allocation must be made between the taxable income of the trust and the tax-exempt income and that he is to be taxed only on that portion of the income distributed to him or for his benefit as is, in fact, taxable. This question has been determined in petitioner's favor in J. Cornelius Rathbone, 37 B.T.A. 607, affd. 103 Fed. (2d) 301. The question also appears to have been resolved by the Commissioner's Regulations. Section 19.22 (b) (4)-5 of Regulations 103 provides: When the income of a trust is taxable to beneficiaries, as *224 in the case of a trust the income of which is to be distributed to the beneficiaries currently, each beneficiary is entitled to exemption as if he owned directly a proportionate part of the Treasury bonds held in trust. * * * See I.T. 3269, C.B. 1939-1 (Part 1), p. 163; I.T. 3231, C.B. 1938-2, p. 147. These decisions and rulings make clear that where tax-exempt income is received by a trust and distributed to the beneficiaries of the trust it does not lose its tax-exempt character in the hands of the latter. We proceed with a consideration of one of the specific issues raised. Petitioner agrees that section 167(a)(3) of the Revenue Act of 1936 [1] requires that he be taxed on the sums paid by the trustee as premiums on his life insurance policies. He insists, however, that there must be an allocation between the taxable income and the tax-exempt income of the trust and that he be taxed only to the extent that taxable income was used to pay the insurance premiums. The theory back of section 167, supra, is that where income of a trust is used to pay the contractual or other obligations of the grantor of a trust, sums so expended are as much his income as if they had *225 in the first instance been paid directly to him. Burnet v. Wells, 289 U.S. 670. For the reasons heretofore set forth we think petitioner should be taxed only on so much of the trust income used to pay the premiums on his policies as may have come from the taxable income of the trust. Pursuant to the compromise settlement of petitioner's suit to reform the trust instrument and before the courts of California had given their final approval, petitioner's former wife, Alzoa Garland Scott, paid to him within the taxable years certain sums as set forth in our findings. It appears *226 that as Alzoa Scott received distributions from the trust she turned over to petitioner portions thereof, which at times exceeded 37 1/2 per cent of the particular distribution. Counsel for petitioner insists that the amount paid in excess of the 37 1/2 per cent should be regarded as a gift and, in any event, not taxable as a distributable share of the trust income. No evidence was offered in support of this point and in the state of the record we are not willing to assume that the excess sums were gifts to petitioner. Although petitioner's former wife was in the court room and took the stand no attempt was made to learn from her the circumstances under which the payments were made to petitioner. We hold that the amount distributed to petitioner was taxable to him, limited, however, by the taxable income of the trust. A further issue is whether or not 20 per cent of the amounts received by petitioner from the trust, representing the contingent fee payable to petitioner's attorneys for services in procuring reformation of the trust, (a) may be excluded from his gross income upon the ground that he had assigned to the attorneys an equitable interest in the trust or (b) may be deducted *227 as a nontrade or nonbusiness expense under section 121 of the Revenue Act of 1942, which by its terms is made to apply to all previous tax years. We express no opinion upon the first alternative, being of the view that the payments fall clearly within the deductions allowable under section 121, supra. That section permits the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year for the production or collection of income, or for the management, conservation, or maintenance of property held for the production of income." It is respondent's view that, having alleged fraud in the inducement, "what petitioner got out of the lawsuit had been his all the time." There can be no question but that the trust corpus consisted of income-producing property and accepting respondent's premise we think it follows that the attorneys' fees were ordinary and necessary expenses paid for the collection of income, see Henry Rose, 1 T.C. 24; Spear v. Gagne, 49 Fed. Supp. 263, or at any rate for the management and conservation of petitioner's interest in income-producing property. See R.C. Coffey, 1 T.C. 579, 589. *228 We conclude that the amounts paid to the attorneys are deductible, reduced, however, by the ratable amount thereof "allocable to interest * * * wholly exempt from the taxes imposed by this chapter." Revenue Act of 1942, section 121 (b). The final issue concerns petitioner's taxability upon income of the trust that was payable to his four minor children for their support and maintenance. On this account respondent has included in petitioner's income the sums of $6,800 and $6,000 for the respective tax period. It appears, or at least there is no contention to the contrary, that such sums were actually expended for the maintenance of the children. Petitioner would escape tax upon these amounts upon the ground that the mother had been awarded legal custody of the children in connection with the divorce and petitioner therefore was under no legal obligations to support them. Section 196 of the California Civil Code provides that "The parent entitled to the custody of a child must give him support and education suitable to his circumstances." This issue, however, must be decided against petitioner upon authority of Arthur Letts, Jr., 41 B.T.A. 1172, wherein *229 it was pointed out that section 196 of the California Civil Code does not relieve the father of his duty to support children "where the mother having their custody is unable to support them." See Penal Code of California, section 270. In the case at bar the parties have stipulated that the divorced wife during the tax years "had ample means of theirs [the minor children] or her own to support them." The stipulation does not indicate the source of such "ample means", but the inference is strong that the source was the income of the trust which petitioner had created. Indeed, petitioner on reply brief appears to concede as much for he states that he was under no legal obligation to support the children, "he already having amply taken care of that matter." Since there is no proof that the means to support the children came from other than the trust income, the Letts case is directly in point: The record does not show that Bessie E. Hann was able to support the children during the taxable years except by means of the amounts paid her from the income of the trust for that purpose. In the absence of any showing to the contrary, we must assume therefore that the support and maintenance *230 of petitioner's children was supplied during the taxable years out of the trust income paid to Bessie E. Hann for that purpose and that the petitioner's continuing obligation under California law to supply the keep of his children, who would have been otherwise without support and maintenance, was thereby discharged. The petitioner is, therefore, taxable on the amounts of trust income used during the taxable years for the support of his two children. For the reasons heretofore presented, however, the amount of income taxable to petitioner under this issue is to be ratably reduced by the proportion of trust income represented by tax-exempt income. Decision will be entered under Rule 50. Footnotes
1. Where any part of the income of a trust - * * * * *
(3) is, or in the discretion of the grantor or of any person not having a substantial adverse interests in the disposition of such part of the income may be, applied to the payment of premiums upon policies of insurance on the life of the grantor (except policies of insurance irrevocably payable for the purposes and in the manner specified in section 23 (o), relating to the so-called "charitable contribution" deduction); then such part of the income of the trust shall be included in computing the net income of the grantor.↩